KELLY DEROCHE                                    CIVIL ACTION

VERSUS                                           NUMBER: 17-0321

NANCY A. BERRYHILL, ACTING                       SECTION: "I"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

## **REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Disability Insurance Benefits ("DIB").  (Rec. docs. 9, 10).

Kelly DeRoche, Plaintiff herein, filed the subject application for DIB on December 11, 2013, alleging disability as of June 1, 2008.  (Tr. pp. 161-167).  In a "Disability Report-Adult" form that appears in the administrative record below, the conditions limiting Plaintiff's ability to work were identified as depression, chronic pain, osteoarthritis, fibromyalgia, thyroid nodules, GERD, optic neuritis, borderline glaucoma, depression, anxiety, fatigue, degenerative disc disease, arthritis, and bulging discs in the neck and lower back.  (Tr. pp. 179-183).  Plaintiff's application for DIB was denied at the initial level of the Commissioner's administrative review process on February 24, 2014.  (Tr. pp. 71-74).  Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on February 23, 2015 at which Plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified.  (Tr. pp. 77-78, 26-61).  On June 2, 2015, the ALJ issued a written decision in which she concluded that Plaintiff was not disabled within the meaning

of the Social Security Act ("SSA").  (Tr. pp. 8-24).  The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on November 9, 2016, thus making the ALJ's decision the final decision of the Commissioner.  (Tr. pp. 1-7).  It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §405(g).

In her cross-motion for summary judgment, Plaintiff frames the issues for judicial review as follows:

1. Did the Administrative Law Judge err by determining that the Plaintiff could perform her past relevant work?

2. Did the Administrative Law Judge err by finding that the Plaintiff was not disabled under the meaning of the Social Security Act from June 1, 2008, through the date last insured?

(Rec. doc. 9-1, p. 2).

Relevant to the issues to be decided by the Court are the following findings that were made by the ALJ:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2010.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2008 through her date last insured of September 30, 2010 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments:  history of degenerative disc disease of the cervical and lumbar portions of the spine; obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [she] can occasionally lift and/or carry 10 pounds and frequently lift and/or carry less than 10 pounds; can stand or walk for a total of 2

hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; [can] never climb ladders, ropes or scaffolds; [and can] occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl.

6. Through the date last insured, the claimant was capable of performing past relevant work as a clerk assistant and data entry clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 1, 2008, the alleged onset date, through September 30, 2010, the date last insured (20 CFR 404.1520(f)).

(Tr. pp. 13, 15, 17, 18).

Judicial review of the Commissioner's decision to deny DIB is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not re-weigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1983). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. *Harrell*, 862 F.2d at 475. In making this determination, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §404.1520, as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. An individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors;

4. If an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be made;

5. If an individual's impairment precludes her from performing her past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that she is disabled and must ultimately demonstrate that she is unable to perform the work that she has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). In determining whether a claimant is capable of performing the work that she

has done in the past, the ALJ is required to assess the demands of the prior work and to compare those demands to the claimant's present capabilities. *Villa*, 895 F.2d at 1022; *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988); *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980). The assessment of the demands of a claimant's prior work "… may rest on descriptions of past work as actually performed or as generally performed in the national economy." *Villa*, 895 F.2d at 1022 (citing *Jones v. Bowen*, 829 F.2d 524, 527 n. 2 (5th Cir. 1987)). A finding that the claimant is or is not disabled at any point in the five-step review process is conclusive and terminates the Commissioner's analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

As noted above, Plaintiff alleged that she became unable to work on June 1, 2008 and her insured status for purposes of DIB coverage expired on September 30, 2010. That being the case, Plaintiff bore the burden of establishing that she suffered from a disabling condition before the expiration of her insured status. *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)(citing *Milam v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)). For a claimant to demonstrate that she is entitled to DIB, she must prove not only that she is disabled but that she became disabled prior to the expiration of her insured status. *Anthony*, 954 F.2d at 295. "Any impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability." *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).

Before discussing Plaintiff's challenges to the Commissioner's decision, the Court pauses to recall the standards and burdens imposed in the summary judgment context. "Summary judgment is appropriate if the record discloses 'that there is no genuine issue of material fact and that the moving part is entitled to a judgment as a matter of law.'" *Spellman*

*v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993)(quoting Rule 56(c), Fed. R. Civ. P.). "A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986)); *see also*, Rule 56(c)(1)(A). Rule 56 does not, however, impose upon a district court a duty to sift through the record in search of evidence supporting a party's summary judgment position. *Ragas Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Indeed, Rule 56(c)(3) specifically provides that a "... court need consider only the cited materials ..."

Unfortunately, Plaintiff's cross-motion for summary judgment does not measure up to the foregoing standards. The motion contains no citations to caselaw or to the administrative record upon which Plaintiff's challenges to the Commissioner's decision are grounded. Despite these omissions, based in part upon a review of the portions of the administrative record cited by the Defendant, the Court has culled from the voluminous record below the limited evidence bearing on Plaintiff's condition as it existed during the relevant time period from June 1, 2008 to September 30, 2010. A discussion of that evidence follows.

On June 2, 2008, staff of Dr. Enrique Flechas, a treating psychiatrist of Plaintiff, telephoned Plaintiff to advise her that she was being referred for a sleep study and unidentified medication therapy. (Tr. p. 255). On August 25, 2008, Plaintiff was seen by Dr. Randall Poche, another one of her treating physicians. In the doctor's brief, partially legible treatment note from this date, it was reported that Plaintiff was off all antidepressant medications and was only taking Xanax, Prevacid, and Premarin. Symptoms included

irritability, agitation, lack of energy, and crying spells.  The assessment was depression and Plaintiff was prescribed Zoloft.  (Tr. p. 428).  When she returned to Dr. Poche on November 11, 2008, Plaintiff reported discontinuing Zoloft as it made her feel poorly.  She also indicated that she was generally not feeling well and tended to internalize her feelings such that she could feel the blood pumping through her body.  Other symptoms included lack of energy, headaches, body aches, and hot/cold flashes.  Plaintiff was prescribed Pristiq and was re-started on Xanax.  (*Id.*).

The next treatment note entry from Dr. Poche is dated November 21, 2008 and bears only the word "Demension."  (Tr. p. 428).  In a subsequent, somewhat unreadable entry from December 30, 2008, it appears that Plaintiff complained of pain to the right breast which had precipitated an earlier visit to an emergency room for evaluation.  Medications were prescribed.  (*Id.*).  On January 23, 2009, Dr. Flechas declined to authorize a refill for Paxil.  (Tr. pp. 253-254).  Plaintiff returned to Dr. Poche on June 12, 2009 and complained of pain between the shoulder blades and upper lumbar muscles, made worse with forward bending, deep inspiration, and twisting of the trunk.  The assessment was parascapular muscle strain and Plaintiff was prescribed Flexeril.  (Tr. p. 427).  She was seen again by Dr. Poche on July 13, 2009 for complaints of ringing in the ears, a cough, and brown phlegm.  Plaintiff also complained of poor sleep.  The diagnosis was an upper respiratory infection and Plaintiff was prescribed Prilosec and Elavil.  (*Id.*).  An appointment scheduled for July 26, 2009 was cancelled.  (*Id.*).  Upper respiratory infection symptoms persisted on August 31, 2009.  Plaintiff was counseled on weight loss through diet and exercise and medications were prescribed.  (*Id.*).  Further medications were prescribed on September 3, 2009 to address Plaintiff's continued upper respiratory infection symptoms.  (*Id.*).

On January 27, 2010, Plaintiff was seen at Baton Rouge ENT Associates for complaints of congestion, a runny nose, sore throat, and related symptoms. The diagnosis was sinusitis and she was prescribed Nasonex, Doxycycline, and Allegra. (Tr. p. 1197). Plaintiff was telephonically advised of a negative culture report on February 1, 2010 and was directed to continue on her medication regimen. (Tr. p. 1196). Bloodwork was performed on February 23, 2010. (Tr. pp. 440-442). Plaintiff returned to Dr. Poche on February 25, 2010 with a variety of complaints including depression with easy agitation, weight gain, GERD, recurrent low back pain, and continued symptoms of an upper respiratory infection. Celexa was prescribed and Abilify was to be added to Plaintiff's list of medications. (Tr. p. 426). The final treatment note that was generated during the relevant time period documents Plaintiff's return visit to Dr. Poche on May 24, 2010. Plaintiff complained of being light-headed and dizzy following a physical altercation three weeks earlier in which she lost consciousness and suffered a laceration to the scalp and a black eye. That altercation had necessitated an emergency room visit during which a CT scan was taken which produced negative results. Plaintiff had also suffered a fall earlier in the day with a resulting abrasion and low back pain but she was neurologically intact. The assessment was post-concussion headaches and Plaintiff was prescribed Meclizine. (*Id.*).

As noted earlier, a hearing *de novo* before an ALJ went forward in this matter on February 23, 2015, some four years and five months after Plaintiff's disability insurance status had expired. Although the transcript of that hearing is 45 pages in length, very little of the testimony that was elicited touched upon Plaintiff's condition as it existed during the relevant time period. What testimony Plaintiff did provide was that her doctors at that time included Dr. Flechas, who had treated her with various antidepressants for increased anxiety

and depression following the loss of a child in 2001.  She had also attended some counseling with a grief group.  Plaintiff's anxiety and depression continued to affect her at the time of the hearing, including feelings of being overwhelmed, crying spells, and a lack of focus.  (Tr. pp. 43-45, 48, 50).  Other than that, no other testimony was elicited regarding Plaintiff's functionality during the relevant time period, which spanned approximately two years and four months.

Plaintiff's first challenge to the Commissioner's decision is that the ALJ erred in determining that she could perform her past relevant work.  In support of that challenge, Plaintiff argues that she has been treated by Doctors Flechas and Poche over the past 10 years for severe depression and various other conditions, both of whom indicated that she is disabled, and that she has been on numerous medications which cause side effects that render her unable to work.  Plaintiff further argues that since June 1, 2008, she has experienced a host of symptoms on a daily basis that result in a myriad of exertional and non-exertional limitations; that an MRI taken in 2004 revealed severe cervical spine degenerative changes which continued throughout the relevant time period; and that she additionally suffers from obesity which causes an unspecified but yet "detrimental impairment" to her functional abilities.  Finally, Plaintiff asserts that the ALJ failed to afford sufficient weight to the voluminous medical records that she submitted, which records purportedly supported her testimony regarding her limitations, and that it is clear that she cannot return to her past relevant work when all of her medical conditions and prescription medications are taken into account.  (Rec. doc. 9-1, pp. 3-4).

In addressing Plaintiff's first challenge to the Commissioner's decision, the Court emphasizes what it noted earlier:  that she cites not one single page of the 1,261-page

administrative record as supportive of the arguments that she makes. By way of example, Plaintiff does not direct the Court to, much less discuss, the particular pages of the voluminous record that contain the notes of the treatment that she received during the relevant time period. Nor does she cite for the Court the specific portions of the record where Doctors Flechas and Poche reportedly declared her disabled and unable to work. Suffice it to say that a claimant's recitations of the symptoms that he or she suffers is not sufficient to establish that a physical or mental impairment even exists. 20 C.F.R §404.1528(a). Similarly, the mere existence or diagnosis of a condition does not compel the conclusion that a claimant is disabled; rather, the proper inquiry is whether that condition results in functional limitations that preclude a claimant from performing her past work or any other work. *Bordelon v. Astrue*, 281 Fed.Appx. 418, 422 (5th Cir. 2008); *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). Indeed, it is not inherently inconsistent for a claimant to suffer from a condition that is "severe" within the meaning of the SSA but for that condition to result in no functional limitations. *See*, *e.g.*, *Griffeth v. Commissioner of Social Security*, 217 Fed.Appx. 425, 427-28 (6th Cir. 2007); *Lacroix v. Barnhart*, 465 F.3d 881, 888 n. 3 (8th Cir. 2006); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

As touched upon earlier, because Plaintiff's Title II insured status expired on September 30, 2010, she bore the burden of establishing that she became disabled on or before that date to be eligible for DIB. *McLendon v. Barnhart*, 184 Fed.Appx. 430, 431 (5th Cir. 2006)(citing *Ivy*, 878 F.2d at 1048). As made clear by the Fifth Circuit panel in *McLendon*:

> The mere presence of an impairment does not necessarily establish a disability. If a claimant has a degenerative or ongoing impairment, the relevant inquiry is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition. Evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status is not relevant to the

Commissioner's Title II disability analysis. *See Torres v. Shalala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995).

*McLendon*, 184 Fed.Appx. at 431.

The law is also clear that a claimant's subjective complaints of symptoms and attendant limitations, including those testified to in an administrative hearing before an ALJ, must be supported by the objective evidence of record. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

As aptly observed by the ALJ who considered Plaintiff's application for DIB, "[a]lthough the record contains a lot of medical evidence, there is actually little to none during the time of relevance." (Tr. p. 17). The ALJ did take notice of Plaintiff's history of degenerative disc disease ("DDD") of the spine, including MRI evidence that was generated over four years prior to the date that she herself claimed that she became unable to work as well as x-ray studies conducted after her date last insured. (Tr. p. 16). However, as noted by the ALJ, the administrative record contains "… sparse evidence of any continued diagnosis or treatment for … [DDD] during the relevant time period." (*Id.*). A lack of ongoing treatment may properly be considered by an ALJ in determining a claimant's disability status. *Fraga*, 810 F.2d at 1303. Similarly, the absence of any more significant findings documented during the relevant time period is a proper consideration in a Social Security proceeding, *Clayborne v. Astrue*, 260 Fed.Appx. 735, 737 (5th Cir. 2008), as is the fact that on none of the occasions that Plaintiff was seen in that time period did her treating physician place any limitations upon her activities. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995); *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1989). Notwithstanding the paucity of DDD-related treatment records that were generated during the relevant time period, the ALJ assessed Plaintiff as

retaining the residual functional capacity to perform a limited range of sedentary work. (Tr. pp. 15-17).

Although the Court is directed to no such pronouncements made during the time period at issue, the fact that Doctors Flechas and/or Poche may have opined that she was disabled and unable to work carries no special significance as that is the ultimate issue reserved to the Commissioner. 20 C.F.R. §404.1527(d)(1). As respects Plaintiff's obesity, despite her failure to specifically identify that condition as a disabling one in her application for DIB and related paperwork, the ALJ independently recognized that obesity should be considered in conjunction with her other impairments as required by Social Security Ruling ("SSR") 02-1p. (Tr. pp. 16-17). *See Beck v. Barnhart*, 205 Fed.Appx. 207, 211-12 (5th Cir. 2006). By specifically considering Plaintiff's history of DDD and reducing the range of available sedentary work accordingly, the ALJ adequately complied with the mandate of SSR 02-1p. *Thomas v. Astrue*, No. 11-CV-2290, 2012 WL 6707105 at *4 (E.D. La. Nov. 26, 2012), *adopted*, 2012 WL 6707038 (E.D. La. Dec. 21, 2012), *aff'd*, 539 Fed.Appx. 644 (5th Cir. 2013). Just like the plaintiff in *Thomas*, Plaintiff cites to no medical evidence establishing that her obesity caused any specific work-related limitations that were not accounted for by the ALJ, nor does she cite to any objective evidence of record which documents any work-related medication side-effects, absent which the Court is unable to say that the Commissioner's decision was not supported by substantial evidence. *Id.*

In her second challenge to the Commissioner's decision, Plaintiff generally alleges that the ALJ committed reversible error by determining that she was not disabled within the meaning of the SSA, reiterating much of the same argument that she advanced under the rubric of her first challenge. As discussed earlier, disability is not established simply by

virtue of the fact that an individual has been treated by a doctor or doctors for a particular number of years, that she suffers from a requisite number of impairments, or that she has been prescribed a certain type or quantity of medications.  Instead, the appropriate inquiry is whether a claimant's condition(s) results in functional limitations that prevent her from performing her past work or any other work.  *See*, *e.g.*, *McKinney v. Colvin*, No. 13-CV-0900, 2014 WL 652948 at *6-7 (S.D. Miss. Feb. 19, 2014)(despite finding them to be "severe" impairments, ALJ did not err in assessing no functional limitations due to headaches, obesity, or hypertension).

Irrespective of the breadth of the administrative record below, the Court's focus here is limited to the approximately two year and four month period between the date that Plaintiff alleged that she became disabled on June 1, 2008 and the date that she was last insured for DIB purposes on September 30, 2010.  Unfortunately, the evidence that was generated during that brief time period was scant indeed and fails to reveal ongoing treatment for a condition or conditions that resulted in functional limitations that prevented Plaintiff from performing her past work or any other work.  The Court notes that in the Function Report form that Plaintiff completed in this case (tr. pp. 200-207), which form the ALJ may and did properly consider, *Vaughan*, 58 F.3d at 131, Plaintiff indicated that she could tend to her personal needs, care for her husband and granddaughter, prepare simple meals, clean weekly, do laundry, operate a riding lawn mower, drive, go out alone, and go shopping, spending her spare time watching TV, reading, cooking, doing yardwork, and socializing with family members.  (Tr. p. 16).  Plaintiff's ability to engage in such activities is not indicative of someone who is unable to perform any work whatsoever.  *Fraga*, 810 F.2d at 1302 (ability to walk one-half block, to attend church, and to drive 20 to 30 miles per week supported

finding of "not disabled"). It is not the Court's province to re-weigh the evidence and substitute its judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that Plaintiff's suit be dismissed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).[1]

New Orleans, Louisiana, this __7th__ day of _____ September _____, 2017.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[1] *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.